IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SKYLINE NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:20-cv-00470 |
| | ) | |
| GALAX ELKS LODGE #2212, INC. and | ) | By: Elizabeth K. Dillon |
| BENEVOLENT AND PROTECTIVE | ) | United States District Judge |
| ORDER OF ELKS OF THE UNITED | ) | |
| STATES OF AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the court is an unopposed motion for judgment on the pleadings filed by intervenor trustees Vincent Brandtner and Montie Largin and defendant Benevolent and Protective Order of Elks of the United States of America, Inc. (Mot. for J., Dkt. No. 27.) This is an interpleader action filed by Skyline National Bank seeking to resolve competing claims to $666,090.69 that are deposited in accounts held by the bank. The matter has been briefed, the court finds no hearing is required, and the matter is ripe for resolution. For the reasons stated below, the court will grant the motion for judgment on the pleadings.

I. BACKGROUND

The Benevolent and Protective Order of Elks of the United States of America, Inc. ("BPOE") is a not-for-profit, national fraternal organization, organized under the laws of Washington, D.C. and located in Chicago, Illinois. (Compl. 2, Dkt. No. 1.) BPOE is comprised of local lodges that operate under BPOE charters. (*Id.* at 2.) Chartered lodges are contractually bound to follow the BPOE Constitution and bylaws, known as the Grand Lodge Statutes. (Answer 5, Dkt. No. 8.) Galax Elks Lodge #2212, Inc. ("Galax Lodge") is a local lodge that

1

operated under a BPOE charter in Galax, Virginia. (Compl. 2.) Galax Lodge has six deposit accounts with Skyline National Bank ("Bank"), with a total balance of approximately $666,090 in these accounts. (*Id.* at 3.)

On May 22, 2020, BPOE revoked the charter for Galax Lodge and demanded that Galax Lodge turn over all its property to BPOE trustees, including all funds in its deposit accounts. (*Id.*) BPOE revoked the charter because it determined that Galax Lodge was not adhering to the Grand Statutes. (Answer 5.) Specifically, BPOE alleges that Galax Lodge failed to follow BPOE laws regarding the elections of officers, scheduling meetings, recording minutes, and filing financial information. (*Id.*) BPOE served Wesley Brannock and Robin Bedsaul, officers of Galax Lodge, with Executive Order 19-206, which documented BPOE's allegations, revoked the Galax Lodge charter, and appointed Vincent Brandtner and Montie Largin as trustees of the now defunct Galax Lodge. (*Id.*) According to BPOE, Grand Lodge Statute 9.170 provides a lodge ten days to file an appeal challenging a charter revocation. (*Id.* at 6.) Galax Lodge did not file an appeal within this ten-day period; therefore, BPOE considers the charter revocation final. (*Id.*)

On June 3, 2020, Galax Lodge held a meeting to vote on BPOE's demand, but it failed to reach a decision. (*Id.*) On July 16, 2020, BPOE demanded that the Bank release to the trustees all the funds from Galax Lodge accounts. (*Id.*) BPOE claimed that the Bank's failure to release the funds would constitute conversion. (*Id.*)

On August 10, 2020, the Bank filed this interpleader action against Galax Lodge and BPOE pursuant to 28 U.S.C. § 1335. (*Id.* at 1.) The Bank states that it is "an innocent party that wishes to pay the funds to the appropriate party (or parties) . . . [but] [a]bsent a final, non-appealable court order identifying the proper payee(s) . . . , the Bank is subject to the risk of

2

competing claims and multiple liability resulting from the payment of the Funds." (*Id.* at 4.) The Bank asked the court to "[o]rder the Defendants to interplead . . . so that they may settle among themselves their respective rights and claims to the [f]unds without further involvement of the Bank . . . ." (*Id.* at 5.) In addition, the Bank filed a motion, pursuant to 28 U.S.C. § 1335(a)(2), to deposit the relevant funds with the clerk of this court pending a final judgment directing payment of the funds from the court's registry to one or more of the defendants. (Mot. to Deposit, Dkt. No. 4.) On August 13, 2020, the court granted the Bank's motion for interpleader deposit and authorized a deposit in the amount of $666,090.69 to the clerk of the court. (Order Granting Mot. to Deposit, Dkt. No. 6.)

On August 28, 2020, the BPOE filed an answer, which included a crossclaim against Galax Lodge and a third-party claim against Wesley Brannock, Robin Bedsaul, and Gary Murphy, former officers of Galax Lodge. (Answer 1.) The same day, BPOE trustees, Vincent Brandtner and Montie Largin, filed a motion to intervene. (Mot. to Intervene, Dkt. No. 12.) BPOE argues that Galax lodge is now defunct and has no right to retain the funds at issue. (Answer 6.) Instead, "[p]er the Grand Lodge Statutes, the Funds are intended to be held in trust by the Trustees until such time as Galax Lodge becomes reinstated or a new Charter is granted for a new Lodge with jurisdiction encompassing part or all of the same jurisdiction as the former Galax Lodge." (*Id.*) BPOE claims that by transferring the funds to the trustees, the funds will not be held by BPOE nor will they be returned to BPOE. (*Id.*) BPOE seeks a declaratory judgment, "declar[ing] that the Former Officers and the Galax Lodge have no right, title, or interest in the Funds," and the Defunct Lodge Trustees are the rightful owners of the Funds.[1]

---

[1] Pursuant to Grand Lodge Statute § 9.170, after the revocation of a Lodge's charter, "the Grand Exalted Ruler may appoint three Trustees who shall be authorized and empowered to take all necessary actions and execute all required instruments to receive, hold, conserve, manage, sell or encumber, mortgage, borrow against the Lodge property, as they may deem necessary, retaining the proceeds therefrom, until such time as said Lodge may be

3

(*Id.* at 7.)

On October 21, 2020, the court granted the trustees' motion to intervene.  (Dkt. No. 21.) On November 2, 2020, the intervenors filed a third-party complaint.  (Intervenor Compl., Dkt. No. 23.)  Intervenors reiterate the allegations against Galax Lodge stated in Executive Order 19-206, note their appointment to serve as trustees of the defunct lodge, and argue that they are "entitled to take control and possession of all assets of the defunct Galax Lodge, including bank accounts and CD's."  (Intervenor Compl. 1–4.)  Intervenors claim that Galax Lodge and its former officers are liable for conversion of the funds because they have wrongfully assumed control of the funds in denial of intervenors' rights.  (*Id.* at 5.)

On November 6, 2020, intervenors and BPOE filed an unopposed motion for judgment on the pleadings.  (Mot. for J.)  Intervenors argue that they are entitled to possession of the funds in dispute because: (1) Galax Lodge forfeited any right to claim the funds by failing to file an answer; and (2) BPOE law governs the dispute and vests trustees with former Galax Lodge funds and property.  (*Id.* at 7–13.)   Intervenors also argue that the court should award the Bank reasonable attorney's fees.  (*Id.*)

## II.  DISCUSSION

### A.  Jurisdiction

Pursuant to 28 U.S.C. § 1335, "district courts shall have original jurisdiction over any civil action of interpleader . . . filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more . . . ,"

---

reinstated or a new Charter granted in the same community."  (Dkt. No. 12-2 at 9.)  If, "after five (5) years from the date of the creation of the trust, [] it appears to the Grand Exalted Ruler and the State Sponsor that the Lodge in question is not going to be reinstated, or a new Lodge or Lodges are not likely to be formed in the same jurisdiction, the Grand Exalted Ruler shall order the remaining trust assets conveyed to either . . . (1a) one or more tax-exempt charitable organizations of the State Association in which the Lodge was located . . . [or] (1b) one half of the assets to an investment fund for that State's Association and one half of the assets to one or more tax-exempt charitable organizations . . . [or] (2) a new Lodge within the same State or Territory . . . ."  (*Id.* at 10–11.)

if there are two or more claimants of diverse citizenship and the plaintiff has deposited the disputed money with the court. Here, it is uncontested that Galax Lodge and BPOE are diverse claimants. (Compl. ¶ 2–3 (Galax Lodge is organized under the laws of Virginia and BPOE is organized under the laws of Washington, D.C.)). In addition, the Bank has deposited $666,090.69 with the court as the funds in dispute. (Order Granting Mot. to Deposit, Dkt. No. 6.) Therefore, the court has proper jurisdiction over this interpleader action.

**B. Default Judgment**

Pursuant to Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The default judgment may be entered by the clerk of the court if the claim is for a sum that is certain, or by the court if the party applies to the court for a default judgment. Fed. R. Civ. P. 55(b). "In the context of an interpleader action, a defendant against whom a default judgment has been entered forfeits any claim of entitlement that might have been asserted by that defendant." *Guardian Life Ins. Co. of Am. v. Spencer*, No. 5:10CV00004, 2010 WL 3522131, at *3 (W.D. Va. Sept. 8, 2010) (citing *Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n.4 (4th Cir. 1984); *Gulf Coast Galvanizing, Inc. v. Steel Sales, Co.*, 826 F. Supp. 197 (S.D. Miss. 1993)); *see New York Life Insurance Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir. 1983) (defaults of interpleader defendants did not make the interpleader action inappropriate but merely expedited its conclusion by obviating the need to settle adverse claimants' rights to the fund).

Here, over five months have elapsed since the Bank filed this interpleader action and Galax Lodge has failed to file an answer. On September 11, 2020, the registered agent for Galax Lodge, James T. Ward, Esq., was personally served with process on the interpleader complaint

by a Deputy U.S. Marshal. (Dkt. No. 15.) On October 16, 2020, the registered agent for Galax Lodge, James Ward, and BPOE officials Wesley Brannock, Robin Bedsaul, and Gary Murphy were each issued electronic summons on BPOE's third-party complaint. (Dkt. No. 20.) On November 11, 2020, the registered agent for Galax Lodge was again issued an electronic summons, this time on the Bank's complaint. (Dkt. No. 25.) These summonses state that "[i]f you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint [and third-party complaint]." (Dkt. Nos. 20, 25.) On December 31, 2020, BPOE filed proof of service, including: (1) an affidavit for the summons on the third-party complaint; and (2) a certified, registered letter and a copy of the return receipt, demonstrating that service of process was effectuated on the registered agent for Galax Lodge. (Dkt. No. 28.) Despite these multiple notifications, Galax Lodge has not made any filings in this case. Moreover, Galax Lodge "has not communicated to [opposing] counsel any intention to contest the action or the award of [f]unds." (Dkt. No. 27 at 8.) Given Galax Lodge's failure to plead or defend this action, the court will enter a default judgment awarding the contested funds in the amount of $666,090.69 to intervenor trustees Brandtner and Largin.

**C. Attorney's Fees**

"A federal court has the discretion to award attorney's fees and costs to the stakeholder in an interpleader action when it is fair and equitable to do so." *Cincinnati Cas. Co. v. TMO Glob. Logistics, LLC*, No. 3:12CV00059, 2013 WL 5372807, at *1 (W.D. Va. Sept. 24, 2013) (citing *Sun Life Assurance Co. v. Grose*, 466 F. Supp. 2d 714, 717 (W.D. Va. 2006); *Weber v. Rivanna Solid Waste Auth.*, No. 3:98CV0109, 2001 WL 1516737, 2001 U.S. Dist. LEXIS 19644, at *5–6 (W.D. Va. Nov. 27, 2001)). "The theory behind such an award is that plaintiff, by seeking resolution of the multiple claims to the proceeds, benefits the claimants, and that plaintiff should

not have to absorb attorneys' fees in avoiding the possibility of multiple litigation." *ReliaStar Life Ins. Co. of New York v. LeMone*, No. CIV.A. 7:05CV00545, 2006 WL 1133566, at *1 (W.D. Va. Apr. 25, 2006) (citing *Aetna Life Ins. Co. v. Outlaw*, 411 F. Supp. 824, 826 (D. Md. 1976)). "However, because the fees and costs are taken out of the deposited fund, "such fees and costs are not granted as a matter of course." *Cincinnati Cas. Co.*, 2013 WL 5372807 at *1 (citing *Grose*, 466 F. Supp. 2d at 717).

"In exercising its equitable discretion, the court must balance the rights of the stakeholder against the rights of the beneficiaries of the fund." *Id.* (citing *Frontier Ins. Co. v. Mission Carrier, Inc.*, No. 91–5151, 1992 WL 209299, 1992 U.S. Dist. LEXIS 12904, at *7 (D.N.J. Aug. 24, 1992)). Generally, attorney's fees "will be relatively modest, in as much as all that is necessary to bring an interpleader action is the preparation of a petition, the deposit of the contested funds into the court, service on all the claimants, and the preparation of an order discharging the stakeholder." *LeMone*, 2006 WL 1133566, at *2 (citing 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1719 (3d ed. 2001)). "[C]ourts have declined to award attorneys' fees and costs where the amount of fees and costs claimed would significantly deplete the total fund at issue." *Id.* (citing *Lewis v. Atlantic Research Corp.*, No. 98-0070H, 1999 U.S. Dist. LEXIS 13569, at *22-24 (W.D. Va. Aug. 30, 1999)).

Here, the recipient of the funds, the trustees, are requesting the award of attorney's fees on behalf of the plaintiff Bank. No parties are contesting the award of attorney's fees. The $6,500 amount in attorney's fees that the trustees request to be paid to the Bank is a relatively small portion of the $666,090 in dispute and would not significantly deplete these funds. Therefore, the court will award $6,500 in attorney's fees to be paid to the Bank from the funds

deposited with the court, before such funds are awarded to the trustees.

### III.  CONCLUSION

For the foregoing reasons, the court will enter an order granting trustees' and BPOE's motion for judgment on the pleadings (Dkt. No. 27), awarding the $666,090.69 in disputed funds to the trustees, and awarding $6,500 of those funds to the Bank as attorney's fees.

Entered: January 27, 2021.

*/s/ Elizabeth K. Dillon*
 Elizabeth K. Dillon
 United States District Judge